## Case No. 11,969.

### ROBINSON v. WISCONSIN M. & F. INS. CO. BANK.

[9 Biss. 117; [1] 18 N. B. R. 243.]

Circuit Court, E. D. Wisconsin. Sept., 1879.

BANKRUPTCY — FRAUDULENT PREFERENCES — MUTUAL DEBTS—BANKS.

1. The defendant bank was a creditor of the bankrupt by note of $4,000, and was at the same time, indebted to the bankrupt on deposit account to the amount of $4,500. Prior to proceedings in bankruptcy, and on the day before the maturity of the note, the defendant having knowledge of the insolvency of the bankrupt, received from the bankrupt a check for $4,000 and thereupon surrendered the note, and by the transaction to that extent reduced the amount of the deposit account in favor of the bankrupt, upon the books of the defendant. *Held*, that the transaction was an adjustment of mutual debts within the meaning of section 5073, Rev. St., and not a fraudulent preference within the meaning of section 5128.

2. Sundry cases cited and commented upon.

The facts in this case were as follows: Prior to the 6th day of August, 1875, the Corn Exchange Bank was a private banking concern, owned by William Hobkirk, and doing business at Waupun, Wisconsin. Hobkirk was the cashier, and C. W. Henning was the teller of the bank. On that date Hobkirk absconded, taking with him the larger part of the funds of the bank. On the 13th day of September, 1875, on petition of creditors, the bank was adjudicated bankrupt and the plaintiff [Almanzo Robinson] was subsequently appointed assignee. From the 1st of May, 1875, until the Corn Exchange Bank ceased to do business, it had an account with the defendant, the Wisconsin Marine and Fire Insurance Company Bank, the two banks having mutual dealings and the bankrupt having a debit and credit account upon the books of the defendant. It was the custom of the defendant bank to receive from the cashier of the bankrupt, in the course of their interchange of business, notes for collection and discount which were placed to the credit of the bankrupt and the proceeds of which were held subject to draft; among which notes so discounted by the defendant, was paper from time to time executed by Hobkirk and indorsed by him as cashier, and, when discounted by defendant, placed to the

---

[1] [Reported by Samuel H. Hempstead, Esq.]

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

credit of the Corn Exchange Bank, and then received by that bank from the defendant, and held for collection in due course of business as it should mature. On the 12th of May, 1875, the Corn Exchange Bank through its cashier, executed and delivered to the defendant a promissory note made by Hobkirk, payable to the order of the Corn Exchange Bank, and on that day by him as cashier indorsed and delivered to the defendant, for the sum of $4000 due in ninety days, and thereupon the defendant discounted the note and placed the amount thereof on its books to the credit of the Corn Exchange Bank, and forwarded the same to that bank for collection. It was not disputed that the indebtedness to the defendant, created by the transaction, for the amount of the note, became a liability of the Corn Exchange Bank, and it was so treated on the trial. This note became due on the 10th day of August, with three days of grace thereafter. The Corn Exchange Bank continued to do business until the 10th day of August, 1875, when the amount to its credit, on the books of the defendant, was four thousand five hundred and twenty-six dollars and sixty-one cents. On the 9th day of August in an interview between the cashier of the defendant bank and the teller of the Corn Exchange Bank, the condition of the latter bank was communicated to the cashier of the defendant, and thereupon, on his request, the teller of the Corn Exchange Bank delivered to the defendant's cashier a check upon the defendant bank for the amount of the four thousand dollar note, dated as of August 10th, which was charged to bills payable on the books of the Corn Exchange Bank, and credited to the defendant. Entry of the transaction being made upon the books of the defendant bank, there still remained to the credit of the bankrupt, in the possession of the defendant bank, five hundred and twenty-six dollars and sixty-one cents, which, on demand of the assignee, was subsequently paid to him. Upon the making of the check before mentioned, the note for four thousand dollars was surrendered to the Corn Exchange Bank. The present action was brought by the assignee to recover from the defendant bank the amount for which it received the check of the bankrupt, in manner before stated, with interest from the 10th day of August, 1875.

E. M. Beach and E. P. Smith, for plaintiff.
Finches, Lynde & Miller, for defendant.

DYER, District Judge. At the time of the transaction in question, the Corn Exchange Bank was indebted to the defendant bank in the sum of four thousand dollars, the amount of the note which the latter bank had discounted. The defendant bank was at the same time indebted, on open account, to the Corn Exchange Bank, in a sum exceeding the amount of the note. The transaction took place on the day before the note matured; the note falling due August 10th, with three days of grace thereafter. The Corn Exchange Bank was insolvent and this fact was brought to the knowledge of the defendant's cashier at the time he received the check for the amount of the note. It is contended by counsel for the assignee that the transaction was a preferential payment to the defendant within the provisions of section 5128, Rev. St., and therefore in fraud of the bankrupt act, and that, as a consequence, the assignee may recover for the benefit of general creditors the amount so alleged to have been paid to the defendant.

It is contended by counsel for the defendant that the case is one of mutual debts between the parties; that, therefore, one debt could be set off against the other, within the provisions of section 5073, and that consequently the transaction was in fact nothing more than an exercise of the right of set-off given by this section, and not within the condemnatory provisions of section 5128. Section 5073, declares that, in all cases of mutual debts or mutual credits between the parties, the account between them shall be stated, and one debt set off against the other, and the balance only shall be allowed or paid. In view of this provision of the law, there can be no doubt that if the transaction as stated had not occurred between the parties, and the matter had been, subsequent to the adjudication in bankruptcy, brought to the court for adjustment, it would have directed an account between the parties to be stated, and would have ordered, as authorized by section 5073, one debt set off against the other. Disregarding matters of form which I deem immaterial, the question is, whether the transaction between the parties was not in fact an exercise of the right of set-off within the meaning of the statute; and if this be so, whether the court can declare it illegal, because the adjustment was thus made by the parties before the adjudication, instead of by the court after adjudication. Here was a plain case of mutual debts between the parties. Hardly a clearer case for application of the statute could arise. Why should it be necessary, when the account was already stated, disclosing the fact that the defendant bank owed the Corn Exchange Bank four thousand five hundred and twenty-six dollars, and that the latter bank owed the defendant bank four thousand dollars, that the parties should await future proceedings in bankruptcy and call upon the court to do that which they could as completely do?

In the language of the court in a case to which I shall refer, "Suppose that the adjustment of these debts had not been made till after the adjudication of bankruptcy; we have seen that by the very words of the act it could then be made. And the result would be exactly the same in either case. Shall the court condemn a man for doing what the court itself does?" Hough v. First Nat.

Bank [Case No. 6,721]. Upon the argument, the form of the transaction was dwelt upon, namely, that a check was drawn and given for the amount of the note, and that the parties spoke of it, in the course of their interview, as a payment. But we are not to sacrifice substance to form, but rather to go beyond the mere form and see what the substance and effect of the transaction was. And doing so, we find that it was in fact an adjustment of mutual debts, and this was what the parties intended to accomplish. Ought the court to put aside the true meaning and effect of the transaction, and adjudge it to have been technically a payment because the form of a check was employed, and, as a consequence, declare that which was in reality a setting off of a portion of the deposit against the amount of the debt evidenced by the note, to have been unlawful? I think not. But it is said that the note was not due when the transaction occurred, and it is true that it took place on the 9th of August and the note was not due till the 10th, with three days of grace, according to the law merchant, thereafter to run. But there existed an indebtedness at the time, and though payment of the note could not by process of law be enforced on the 9th, yet I do not see why the parties could not then deal with it as an existing debt, nor why the circumstance that an adjustment was made the day before the note became due should make it unlawful, nor how any injury could in consequence result to creditors. Suppose the note had been one that had five years to run, and after adjudication in bankruptcy the court had been applied to, to make an adjustment between the parties. Could not an account have been stated and one debt set off against the other, and the balance allowed in favor of the bankrupt? That it could would seem hardly disputable.

It is further suggested that, in giving effect to the statute, the account between the parties must be stated, and the set-off allowed by the court, and that neither of these acts can be done by the parties in advance and independent of the court. Undoubtedly cases may arise in which it is necessary to appeal to the court for a statement of mutual accounts and for an adjustment of such set-off as may be claimed. But if the account is truly stated by the parties themselves, and a correct adjustment is made, so that the same result is attained as would be reached by the court, and nobody is or can be injured, I do not see that it can reasonably be insisted that the parties may not do what otherwise the court would do.

The case of Hough v. First Nat. Bank [supra] is precisely in point, except that in that case the transaction was had on the day the note became due, exclusive of the three days of grace. In that case the bankrupts delivered to the officer of the bank a check on the bank for the amount of their deposit, and this was credited on the note which the bank held against the bankrupts. At the time of the transaction the officers of the bank knew that the bankrupts were insolvent. It was held by the court, that the case was one of an adjustment of mutual debts, and not a fraudulent preference within the meaning of the bankrupt law. The point was urged that the transaction could not be a set-off of mutual debts, because the note was not due at the time, but the court said that the makers of the note had the right to settle or pay it on the day it was by its face due, though payment could not be demanded until the third day thereafter, the judge further observing that he could not concede, that if the note had not matured, the adjustment would have been unlawful, as preferring a creditor. Other remarks by Judge McDonald in his opinion are directly applicable to the case at bar, namely, that if this transaction had never happened and these mutual debts had remained in statu quo till the debtor was adjudged bankrupt, the court would have applied the deposit on the note by way of set-off, precisely as the parties have done. "And the assets to be distributed among the creditors would have been exactly the same as they will be if we allow the transaction under consideration to be valid. In either case the distributive share of each creditor will be precisely the same; consequently, no creditor can be injured by the transaction, and no fraud can be perpetrated by it." Hough v. First Nat. Bank, supra.

Strong support for the view I take of this question is to be found in the case of Winslow v. Bliss, 3 Lans. 220. The case is well stated in the head note. An individual banker discounted a note indorsed to him by a firm, and placed the avails to its credit. Afterward, when the liability of the firm as indorser had been fixed, and on the day before suspension of payment by the banker, he charged the note to its account and thereby, excepting a small balance in the firm's favor, balanced its deposit account with him, and redelivered the note, which the firm accepted in satisfaction of its deposits. It was held, that the surrender of the note gave no preference to the firm within the bankrupt act; that the firm was entitled to have its deposits applied to the satisfaction of its liability upon the note under the section of the law, which provides for the case of mutual debts or mutual credits, and the parties having done precisely what the law would otherwise have compelled the plaintiff as assignee to do, there could be no recovery. It is true that in this case the note had matured when the transaction took place; but I do not regard that circumstance as materially affecting its application to the case at bar. Other cases to some extent bearing upon the question under consideration are In re Farnsworth [Case No. 4,673] and Blair v. Allen [Id. 1,483].

The case of Traders' Bank v. Campbell, 14 Wall. [81 U. S.] 87, is invoked in support of plaintiff's right to recover. But I am of the opinion that it ought not to be regarded as ruling the case at bar. In that case, the debtors of the bank gave to the bank their note for the whole amount of their debt, with a warrant of attorney to confess judgment. On the next day the bank deducted from the note three hundred and twenty-five dollars and twenty cents, an amount which the debtors then had in deposit account with the bank, and entered judgment in the state court for the balance of the note. For the three hundred and twenty-five dollars and twenty cents, the debtor drew a check in favor of the bank in virtue of which that amount was indorsed on the note before judgment. Execution was immediately issued on the judgment, and property of the debtors was levied on and sold. At the same time the bank caused to be sold, under the same execution, a certain sum which it had received by way of collections, made by it in the ordinary course of business, of drafts belonging to the firm. Meantime proceedings in bankruptcy were commenced against the debtors, and subsequently Campbell, the assignee in bankruptcy, brought action against the bank to contest the validity of these transactions.

The supreme court held the judgment obtained by the bank to have been an unlawful preference; also that the levy of execution upon money received as collections by the bank for the bankrupts amounted to a fraudulent preference, although the court say in their opinion, that if the bank had retained these moneys and appropriated them "as a set-off against the debt of the bankrupts, an interesting question might have arisen as to their right to do so."

Effort was made in the case to have the sum of three hundred and twenty-five dollars and twenty cents, which the debtors had on deposit in the bank when the judgment note was given, and which was indorsed on the note by virtue of the debtor's check, declared, to the extent that it was so applied, a valid set-off; but this was not permitted, and it was held to be a payment by way of preference and not to raise the question of set-off. The point is not much discussed in the opinion of the court, and it is not clear that the court meant to declare a proposition broad enough to support the theory of counsel for the plaintiff in the case at bar.

It seems hardly possible that the mere circumstance of taking a check was regarded by the court as giving to that particular branch of the transaction the character of a preferential payment and as destroying the right of set-off. And yet the form of the transaction in this respect is somewhat prominently alluded to. It seems to have been the view of the court, that the bank did not stand on its right of set-off, but, as

is said in the opinion, endeavored to secure an illegal preference by getting the bankrupts to make a payment in the one case, and by seizing their property by execution in the other, when its officers knew of the insolvency, and that therefore both appropriations were void. And in my judgment, in reading the opinion of the court, that part of the case in which the question of set-off is raised is to be considered in connection with the other branches of the case. Taking the whole case together, there was evidently a flagrant attempt on the part of the bank to obtain fraudulent preferences, and the several transactions between it and the bankrupts, which gave rise to the subsequent controversy, were so intermingled that the court seem to have found it necessary to condemn the whole as amounting to a fraudulent and unlawful proceeding. In view of the peculiar state of facts existing in Traders' Bank v. Campbell, I am not satisfied that it rules the case at bar, and I cannot yield my conviction upon the question at issue, except upon clear authority. To what extent, moreover, the doctrine in Traders' Bank v. Campbell, may have been modified by subsequent decisions of the supreme court, which have admonished the circuit and district courts, that in some instances they have advanced quite far enough in their construction of provisions of the bankrupt act, relating to preferences, may be an inquiry not devoid of pertinency. Judgment for defendant.

On rehearing before Mr. Justice HARLAN, the conclusions arrived at in the foregoing opinion were concurred in by him.